## WILLIAMSON v. McCALDIN BROS. CO.

(Circuit Court of Appeals, Third Circuit. April 20, 1903.)

No. 37.

**1. RES JUDICATA—MATTERS CONCLUDED.**

A decree entered after trial, dismissing a libel brought by the owner of a sailing vessel against tugs to recover for damage to such vessel from capsizing, alleged to have been due to the negligence of the tugs in towing, is an adjudication that the tugs were not in fault for the capsizing, which is conclusive between the parties; but an expression of opinion by the court that the capsizing should be ascribed to sea perils was not upon a matter directly in issue, and is not conclusive in a second suit by the owner of the tugs to charge the tow with negligence.

**2. TUG AND TOW—CAPSIZING OF TOW—IMPROPER BALLASTING.**

A bark in ballast, while being towed by two tugs, capsized, sinking one of the tugs. The weather was no worse than should have been anticipated at the season, and the capsizing was due to a lack of sufficient and proper ballast. *Held*, that the tugs were not responsible for such lack of ballast, which was the fault of the bark, and rendered her liable for the injury to the tug.

Appeal from the District Court of the United States for the District of New Jersey.

In Admiralty.

For opinion below, see 116 Fed. 400.

Charles C. Burlingham, for appellant.

La Roy S. Gove and James J. Macklin, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. This was a suit in admiralty brought by the McCaldin Bros. Company, owner of the steam tug McCaldin Brothers, against the bark La Escocesa, to recover damages sustained by the tug by reason of the capsizing of the bark while in tow of that tug and the steam tug William J. McCaldin. On March 23, 1899, the bark La Escocesa, while being towed by the tug McCaldin Brothers alongside and the tug William J. McCaldin ahead, upon a hawser from Erie Basin, Brooklyn, toward the Arthur Kills, capsized near Robbins Reef Light, and carried down and sunk the tug McCaldin Brothers, which was fastened to her port side. The court below decided that the injury to the tug was caused by the negligence of the bark in not supplying herself with sufficient ballast, and condemned the bark to pay the damages which the tug had sustained. The court found that the master of the bark had ordered logs supposed to be the equivalent of 150 tons of interior ballast, and had them placed alongside the bark to serve instead of ballast in the hold; that at the commencement of the trip the wind was not very strong, but increased as the vessels proceeded, and that, when near the Kills, the bark was struck by a sudden squall and capsized; that this capsizing was due to the insufficiency of the ballast with which the bark had supplied herself; that the squall did not

¶ 1. See Judgment, vol. 30, Cent. Dig. § 1268.

appear from the evidence to have been one which, considering the season of the year and the character of the weather at starting, might not have been expected, and certainly was not such a one as, under the circumstances, it was not the duty of the bark to have guarded against. The court held that "it was the duty of the bark to provide itself with sufficient ballast for the voyage, and with that sufficiency the tugs had nothing whatever to do; they had a right to presume that the bark was seaworthy."

The owner of the bark (who is the claimant here and the appellant) had filed a libel in the District Court of the United States for the Southern District of New York against both the named tugs for the damages she sustained by her capsizing, alleging that it was occasioned by negligence on the part of the tugs. Upon a hearing on the merits on full proofs, that court found that the tugs were without fault, and by decree entered January 9, 1900, dismissed the libel.

In the answer in this suit the claimant of the bark set up, as a ground of defense, that the capsizing of the bark was caused by the negligence of the tugs, one of the specifications of such negligence being as follows: "(2) They took said bark from her berth without seeing to it that she had proper and sufficient ballast logs." The court below ruled that the claimant was estopped from making the defense of negligence on the part of the tugs, because of the prior adjudication in the suit in the Southern District of New York. In his opinion, the judge below said: "The tugs have been adjudged, in a suit between these parties, to have been without fault, and the claimant is estopped from setting out that defense in this suit."

This ruling is assigned for error. We think, however, the court was right therein. A fact which has been directly tried, and decided by a court of competent jurisdiction, cannot be contested again between the same parties in the same or any other court. Hopkins v. Lee, 6 Wheat. 109, 113, 5 L. Ed. 218; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214. Whether these tugs were guilty of negligence which caused the capsizing of the bark La Escocésa was the precise question raised and determined in the other suit. The libel there was based on such alleged negligence, and the suit was between the same parties.

It is alleged, indeed, that an appeal was taken from that decree to the Circuit Court of Appeals for the Second Circuit, which is still pending. But, if an appeal was taken (of which we have no record evidence), nothing seems to have been done towards the prosecution of it. Moreover, such appeal would not operate to vacate the decree.

It is further contended that full effect was not given by the court below to the decree in the suit in the Southern District of New York. Now, it is true that in that case, after exonerating the tugs, the judge said that he thought "the account of the accident given by the ship at the time is a true one, viz., a sudden gust or squall not to be previously anticipated, which the ship was unprepared to meet from lack of sufficient ballast; and assuming that she was sufficiently ballasted (concerning which, however, the tugs had no responsibility) for an ordinary trip as the weather appeared at starting, the loss should be

ascribed to sea perils, for which the tugs are not liable." This, however, was a mere expression of an opinion upon a point which came only collaterally or incidentally under consideration, and therefore it is not conclusive. Hopkins v. Lee, supra. Whether the tugs were negligent and responsible for the disaster was the question before the court, and that question alone was determined. The liability of the bark was not the subject for adjudication in the other suit.

That the bark was insufficiently ballasted is not disputable under the proofs. Indeed, this is virtually admitted in the answer. The tugs were in no wise responsible for this lack of ballast. In failing to supply herself with proper and sufficient ballast, the bark was guilty of a grave fault, which occasioned or contributed to the disaster which overtook her.

Upon an attentive reading of the evidence, we are convinced that the judge below did not err in his finding as to the weather. The proofs quite justified his conclusion that the gust of wind or squall might well have been anticipated, and should have been guarded against by the bark by proper ballasting. The squall was not extraordinary. Evans, the master of the La Escocesa, described it as "just a freshening of the wind." He says, "She got a little gust of wind, and she careened over a little." Being asked, "What do you call this, a squall or a freshening of the wind?" he answered, "I should say a freshening of the wind." And when asked "if it arose to the dignity of a gale," he answered, "No, it did not." There is other testimony to the like effect, and, upon the whole, we think that the judge was not at all mistaken in his finding as to the state of the weather and the character of the squall which the bark encountered. In our judgment, none of the assignments of error can be sustained.

The decree of the District Court. is affirmed.